IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 3:17-cr-206-03 |
| v. | **PLEA AGREEMENT** |
| ANTHONY SANTOS GOMES, a/k/a ANT, | |
| Defendant. | |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorney, Christopher C. Myers, United States Attorney for the District of North Dakota; defendant, ANTHONY SANTOS GOMES, a/k/a ANT; and defendant's counsel, Bruce Ringstrom Jr., agree to the following:

1.     Defendant acknowledges the Superseding Indictment charges a violation of Title 21, United States Code, Section 846, and the Information charges a violation of Title 18, United States Code, Section 1956(h).

2.     Defendant has read the charges and defendant's attorney has fully explained the charges to defendant.

3.     Defendant fully understands the nature and elements of the charged crimes.

4.     Defendant will voluntarily plead guilty to Count One of the Superseding Indictment and the Information.

5.     The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c).  The parties

specifically agree that Rule 11(c)(1)(C) does not apply.  If the United States makes the non-binding recommendations specified in this Plea Agreement, then defendant acknowledges that this agreement will have been fulfilled.  Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give defendant a right to withdraw defendant's guilty plea.

6.      Defendant will plead guilty because defendant is in fact guilty of the charges.  In pleading guilty to Count One of the Indictment, defendant acknowledges that:

From in or about January 2013 through August 2016, in the Districts of North Dakota, Oregon, Florida, Georgia, North Carolina, New Jersey, California, South Carolina, Ohio, Colorado, Maryland, and elsewhere,

JIAN ZHANG, a/k/a HONG KONG ZARON;
JASON JOEY BERRY, a/k/a DANIEL DESNOYERS;
ANTHONY SANTOS GOMES, a/k/a ANT;
ELIZABETH TON, a/k/a LISA GOMES;
XUAN CAHN NGUYEN, a/k/a JACKIE, a/k/a JACKIE CHAN;
MARIE UM, a/k/a ANGRY BIRD;
VANNEK UM; and
LINDA VAN,

did knowingly and intentionally combine, conspire, confederate, and agree together with the following defendants that were indicted in the District of North Dakota, Eastern Division:  Brandon Corde Hubbard, et al., Case No. 2:15-cr-12; Daniel Vivas Ceron, Case No. 3:15-cr-55; Ronnie Lee Helms, Case No. 3:15-cr-96, and others, both known and unknown to the grand jury, to possess with intent to distribute and distribute a mixture and substance of the following controlled substances and controlled substance

analogues which were intended for human consumption as provided in in 21 U.S.C.

§ 813:

    A. Fentanyl, a Schedule II controlled substance;

    B. ANPP (4-anilino-*N*-phenethyl-4-piperidine), a Schedule II controlled
   substance;

    C. Ethylone (3,4 –Methylenedioxyethylcathinone), a Schedule I controlled
   substance;

    D. Acetyl fentanyl, a/k/a (*N*-(1-phenethylpiperidin-4-yl)-*N*-pheylacetamide), a
   controlled substance analogue of fentanyl. Acetyl fentanyl was designated a
   Schedule I controlled substance on July 17, 2015;

    E. Beta-hydroxy-thiofentanyl, a/k/a (β)-hydroxythiofentanyl, *N*-[1-[2-hydroxy-2-
   (2-thienyl)ethyl]-4-piperidinyl]-*N*-phenyl-propanamide, a controlled substance
   analogue of thiofentanyl, a Schedule I controlled substance. Beta hydroxy-
   thiofentanyl was designated a Schedule I controlled substance on May 12,
   2016;

    F. U-47700, a/k/a  3,4-Dichloro-N-[2-(dimethylamino)cyclohexyl]-N-
   methylbenzamide, a controlled substance analogue of AH-7921 a/k/a 3,4-
   dichloro –N-[(1-(dimethylamino)cyclohexyl]methyl]benzamide, a Schedule I
   controlled substance. U-47700 was designated a Schedule I controlled
   substance on November 14, 2016; and

    G. Furanyl fentanyl, a/k/a  N-(1-Phenthylpiperidin-4-yl)-N-phenylfuran-2-
   carboamide, a controlled substance analogue of fentanyl, a Schedule II

controlled substance. Furanyl fentanyl was designated Schedule I controlled

substance on November 29, 2016;

all in violation of Title 21, United States Code, Sections 802(32), 812, 813, 841(a)(1),

and 841(b)(1)(C); and Title 18, United States Code, Section 2.

<u>Drug Quantity Finding</u>

The grand jury specifically finds that this conspiracy moved more than 400 grams

of a mixture and substance containing fentanyl[1], a Schedule II controlled substance, and

more than 100 grams of a mixture and substance of an analogue of fentanyl as provided

in 21 U.S.C. § 841(b)(1)(A)(vi).

<u>Overt Acts</u>

In furtherance of this conspiracy and to effect and accomplish the objects of it, one

or more of the conspirators committed the following overt acts:

1.      Co-conspirators did possess with intent to distribute and distribute a

mixture and substance containing a detectable amount of fentanyl, a Schedule II

controlled substance; ANPP (4-anilino-*N*-phenethyl-4-piperidine), a Schedule II

controlled substance; and ethylone, a Schedule I controlled substance, within the states of

North Dakota, Oregon, North Carolina, Florida, Colorado, Maryland, and elsewhere;

2.      Co-conspirators did possess with intent to distribute and distribute a

mixture and substance containing detectable amounts of acetyl fentanyl and furanyl

fentanyl, which are controlled substance analogues of fentanyl, a Schedule II controlled

---

[1] 21 U.S.C. § 841(b)(1)(A)(vi):  The chemical structure of fentanyl is N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide.

substance; beta-hydroxy-thiofentanyl, a controlled substance analogue of thiofentanyl, a Schedule I controlled substance; and U-47700, an analogue of AH-7921, within the states of North Dakota, Oregon, New Jersey, Georgia, North Carolina, Florida, Colorado, Maryland, and elsewhere;

      3.    Co-conspirators would and did attempt to conceal their activities by various means and methods including, but not limited to, using various telecommunication facilities designed to mask the identity of co-conspirators. To ensure anonymity and facilitate this conspiracy, co-conspirators used various alias names, WICKR application names, and email addresses, including, but not limited to:

      a.  Phantom Pharma;

      b.  Joe Bleau;

      c.  Yaakov Goldmountain;

      d.  Mountain;

      e.  Goldmountain;

      f.  Solid Goldmountain;

      g.  Apexpharma;

      h.  TheGoldenDawn;

      i.  TheLink;

      j.  SilentWisdom;

      k.  Darkwebtycoon;

      l.  Pandora;

      m. Pandora91;

n.  Toxic Storm;

o.  Oddcouple;

p.  RSix;

q.  Expiresmarch31@gmail.com;

r.  Lucratifanarchy777@gmail.com;

s.  Thelink.pharma@gmail.com;

t.  Undergroundportal777@gmail.com;

u.  Livingmountain777@gmail.com;

v.  Canada.pharma.labs@gmail.com;

w.  Opiationcreation@gmail.com;

x.  Sod.catalase@gmail.com;

y.  sltls@hotmail.com;

z.  info@zaronasia.com;

aa. Dedaola1@126.com;

bb. Goodpartner78@gmail.com;

cc. Whereisit2013@gmail.com;

dd. Agssg84@gmail.com;

ee. dashghahary@icloud.com;

ff.  rainbowsix@icloud.com; and

gg. Acoustickitty1960@gmail.com.

4.      Co-conspirators would and did use United States and Canadian currency in

their drug transactions, as well as virtual currency systems;

5.     Co-conspirators used computers to order and sell substances online using internet sites that are specifically designed to be hidden from the public;

6.     Co-conspirators arranged to obtain controlled substances and controlled substance analogues from outside the United States including, but not limited to, Canada and China.  These substances were then distributed across the United States;

7.     The distribution of acetyl fentanyl, (*N*-(1-phenethylpiperidin-4-yl)-*N*-pheylacetamide), a controlled substance analogue of fentanyl, resulted in the death of J.W. in Garland, North Carolina, on or about January 19, 2014;

8.     The distribution of acetyl fentanyl, (*N*-(1-phenethylpiperidin-4-yl)-*N*-pheylacetamide), a controlled substance analogue of fentanyl, resulted in the death of D.L. in Ramsey, New Jersey, on or about February 23, 2014;

9.     The distribution of fentanyl, a Schedule II controlled substance, resulted in serious bodily injury to J.B. and C.H.J. in Fayetteville, North Carolina, on or about February 24, 2014;

10.     In or about August through September 2014, Daniel Vivas Ceron, along with other co-conspirators, arranged a shipment of fentanyl, acetyl fentanyl, and ANPP from Canada to Florida;

11.     In or about September 2014 through October 2014, Daniel Vivas Ceron, along with other co-conspirators, arranged a shipment of acetyl fentanyl from Canada to Florida;

12.     In or about November 2014, Daniel Vivas Ceron, along with other co-conspirators, arranged a shipment of fentanyl to a co-conspirator in Portland, Oregon;

7

13.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, resulted in the death of B.E.H. in Grand Forks, North Dakota, on or about January 3, 2015;

14.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, resulted in serious bodily injury to L.E.H. in Portland, Oregon, on or about March 7, 2015;

15.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, resulted in serious bodily injury to S.D.D. in Portland, Oregon, on or about March 8, 2015;

16.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, resulted in serious bodily injury to K.R.E. in Portland, Oregon, on or about March 9, 2015;

17.     The distribution of a mixture and substance containing fentanyl, a Schedule II controlled substance, resulted in the death of L.E.B. in Portland, Oregon, on or about March 21, 2015;

18.     In or about February 2015 through March 2015, Daniel Vivas Ceron, along with other co-conspirators, arranged a shipment of a mixture and substance containing beta-hydroxy-thiofentanyl from Canada to Portland, Oregon;

19.     In or about April 2015, Daniel Vivas Ceron, along with other co-conspirators, arranged a shipment of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, from China to Portland, Oregon;

20.    In or about May 2015, Daniel Vivas Ceron, along with other co-conspirators, arranged a shipment of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, from Canada to Fargo, North Dakota;

21.    In or about October 2015 through in or about December 2015, JIAN ZHANG, a/k/a HONG KONG ZARON, and other co-conspirators, arranged a shipment of a mixture and substance containing a detectable amount of acetyl fentanyl, from a co-conspirator in California to Florida;

22.    In or about December 2015 through in or about January 2016, JIAN ZHANG a/k/a HONG KONG ZARON, and other co-conspirators, arranged a shipment of approximately 147 grams of a mixture and substance containing furanyl fentanyl, from China to Florida, and a shipment of a mixture and substance containing acetyl fentanyl by a co-conspirator from California to Florida;

23.    In or about March 2016 to through in or about April 2016, JIAN ZHANG, a/k/a HONG KONG ZARON, and other co-conspirators, arranged a shipment of approximately 298 grams of a mixture and substance containing furanyl fentanyl and approximately 299 grams of a mixture and substance containing U-47700 to Grand Forks, North Dakota;

24.    In or about April 2016 through in or about May 2016, JIAN ZHANG, a/k/a HONG KONG ZARON, and other co-conspirators, arranged a shipment of approximately 247 grams of a mixture and substance containing furanyl fentanyl  to Florida;

9

25.     JASON JOEY BERRY, a/k/a DANIEL DESNOYERS, and Daniel Vivas Ceron, a/k/a Daniel Vivas-Ceron, were the organizers and leaders in this criminal conspiracy in Canada and did so while incarcerated in the Drummond Institution, a medium security prison facility located in Quebec, Canada; and

25.     JIAN ZHANG, a/k/a HONG KONG ZARON, was the organizer and leader of this criminal conspiracy in China and did so by establishing and using the business name of "Zaron Bio-tech," based in China;

All in violation of Title 21, United States Code, Section 846; Pinkerton v. United States, 328 U.S. 640 (1946).

In pleading guilty to the Information, defendant acknowledges that:

From in or about January 2013 to in or about August 2016, in the Districts of North Dakota, Oregon, Florida, Georgia, North Carolina, New Jersey, California, South Carolina, Ohio, Colorado, Maryland, and elsewhere,

ANTHONY SANTOS GOMES, a/k/a ANT,

did knowingly and willfully combine, conspire, confederate, and agree together and with others, to commit an offense against the United States, specifically:  to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (a)(2)(B)(i), in that members of the conspiracy did knowingly and intentionally conduct and attempt to conduct financial transactions in and affecting interstate and foreign commerce within the United States by moving monetary instruments from the United States to Canada and China as described below, which involved the proceeds of a specified unlawful activity, that is, the distribution and importation of controlled substances and controlled substance analogues

10

intended for human consumption in violation of Title 21, United States Code, Sections 802(32), 812, 813, 841, 846, 848, 952, 960 and 963, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(h).

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1.     During the course of and to further said conspiracy, members of the conspiracy sold controlled substances and controlled substance analogues across the United States including, but not limited to:  North Dakota, Oregon, Florida, Georgia, North Carolina, New Jersey, California, South Carolina, Ohio, Colorado, Maryland, and elsewhere;

2.     During the time frame of the conspiracy, members of the conspiracy sold the controlled substances and controlled substance analogues.   Co-conspirators then conducted numerous financial transactions including, but not limited to, money wires, bank wires, and bank deposits, using U.S. currency, Canadian currency, and virtual currency systems to pay for controlled substances; and

3.     To hide their financial transactions, co-conspirators used off-shore accounts, anonymous virtual currency transactions, and third parties to move money, as well as using encrypted communication applications to discuss financial transactions; and

4.      The purpose of transferring currency in this fashion was to conceal and

disguise the nature, source, ownership, and control of the proceeds from the trafficking of

controlled substances and controlled substance analogues;

In violation of Title 18, United States Code, Section 1956(h).

7.      Defendant understands the charges carry the following maximum penalties:

Count One of Indictment

| | |
|---|---|
| Imprisonment: | Life (20 year minimum) |
| Fine: | $20, 000,000 |
| Supervised Release: | 5 years |
| Special Assessment: | $100 |

Information

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $500,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment

on or before the day of sentencing.

8.      Defendant understands that by pleading guilty defendant surrenders rights,

including:

(a)      The right to a speedy public jury trial and related rights as follow:

(i)      A jury would be composed of twelve (12) lay persons

selected at random.  Defendant and defendant's attorney would help choose

the jurors by removing prospective jurors "for cause," where actual bias or

other disqualification is shown; or by removing jurors without cause by

exercising so-called peremptory challenges.  The jury would have to agree

unanimously before it could return a verdict.  The jury would be instructed that defendant is presumed innocent and that it could not return a guilty verdict unless it found defendant guilty beyond a reasonable doubt.

(ii)     If a trial were held without a jury, then the Judge would find the facts and determine whether defendant was guilty beyond a reasonable doubt.

(iii)    At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against defendant. Defendant's attorney can confront and examine them.  In turn, the defense can present witness testimony and other evidence.  If witnesses for defendant refuse to appear voluntarily, defendant can require their attendance through the subpoena power of the Court.

(iv)    At a trial, defendant has a privilege against self-incrimination; thus, defendant can decline to testify.  No inference of guilt can be drawn from defendant's refusal to testify.  Defendant can choose to testify, but cannot be required to testify.

(b)     Defendant has a right to remain silent.  However, under terms of the Plea Agreement, the Judge will likely ask defendant questions about defendant's criminal conduct to ensure that there is a factual basis for defendant's plea.

9.     Defendant understands that by pleading guilty defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial.  Defendant's attorney has explained those rights, and consequences of defendant's waiver.

10.     The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act.  In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a), and must consult and take into account the United States' Sentencing Commission, Guidelines Manual, (Nov. 2016) (USSG).  Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing.  The United States expressly reserves the right to appeal from an unreasonable sentence.

11.     This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota.  It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor.  They remain free to prosecute defendant for any offenses under their jurisdiction.  This Plea Agreement also does not bar or compromise any civil or administrative claim.

12.     Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom defendant is licensed, or with whom defendant does business, of defendant's conviction.

13.     The parties agree that the base offense level under the Sentencing Guidelines for defendant's conduct is 38.  (USSG § 2D1.1(a)(2) – reasonably foreseeable death or serious bodily injury would occur);

+four (4) levels for leader, manager, supervisor (USSG § 3B1.1(a));

+ two (2) levels for money laundering (USSG § 2S1.1(b)(2)(B).

14

14.     At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided defendant has demonstrated a genuine acceptance of responsibility.  (USSG § 3E1.1(a)).  The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently.  (USSG § 3E1.1(b)).

15.     The parties stipulate and agree that, as of the date of this agreement, the defendant appears to qualify for a two-level downward adjustment for acceptance of responsibility.  However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should the defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16.     Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range.  The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the Sentencing Guidelines' Commission to justify the departure.  Both parties reserve the right to object to any departure.  See USSG § 1B1.1, comment. (n.1) (defines "departure").  There may be other adjustments the parties have not agreed upon.

17.    At sentencing, the United States will recommend the low end of the guideline range, or minimum mandatory, whichever is greater.

18.    **Resolution of Civil and Administrative Forfeiture**.  Defendant agrees not to contest the Real Property forfeiture in the civil forfeiture matter pending in the District of North Dakota, <u>United States v. Real Property Located At 11822 Silver Oak Drive, Davie, Florida</u>, Case No. 3:17-cv-00261.

Additionally, defendant withdraws the claim he filed with the Drug Enforcement Administration on February 12, 2018, contesting the administrative forfeiture of four assets specifically identified as:

1. $162,836.00 — 18-DEA-635515;
2. 2007 Maserati Quattroporte M139 VIN: ZAMCE39A970028090 — 18-DEA 635881;
3. 2017 Polaris Sportsman XP 1000 High Lifter Edition VIN: 4XASXM954HB126623 — 18-DEA-635900;
4. Assorted Jewelry, VL: $64,725.000 — 18-DEA-636015,

Defendant consents to the administrative forfeiture of these assets to the United States of America, and additionally agrees to the terms identified in the Stipulation and Settlement Agreement executed by the parties contemporaneous to this Plea Agreement.

Defendant acknowledges that all of the assets covered by this agreement are subject to forfeiture as proceeds of illegal conduct, and are forfeitable to the United States pursuant to 21 U.S.C. § 881 because the assets constitute proceeds or are traceable to proceeds in violations of 18 U.S.C. § 846.

Defendant agrees to voluntarily relinquish all right, title and interest in said assets in favor of the United States and hereby agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture.

Defendant agrees to fully cooperate with the United States and take all steps, as requested by the United States, to pass clear title to forfeitable assets to the United States. The defendant's cooperation includes, but is not limited to: participating in any debriefings with respect to the assets and purchase of assets subject to civil forfeiture in the pending civil cases described herein, testifying truthfully at any trial or proceeding relating to the forfeiture of the assets, providing the United States with any information regarding any potential lienholder interests, and providing all of the defendant's personal records which relate in any manner to the assets.

Defendant also agrees to hold the United States, and any and all agencies, and their agents and employees harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of assets covered by this Plea Agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant waives further notice of proceedings involving the forfeiture of assets the defendant is agreeing to forfeit in this Plea Agreement.

19.    Defendant acknowledges and understands that if defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and defendant will face the following consequences: (1) all testimony and other information defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting defendant for perjury, false statement(s), or false declaration(s), if defendant commits such acts in connection with this agreement or otherwise.

20.    Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order defendant to make restitution for all loss caused by defendant's conduct, regardless of whether counts of the Superseding Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

18

21.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms.  Defendant and defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

22.     **Defendant's Waiver of Appeal**.  Defendants have a right to appeal their conviction and sentence (Judgment), unless they agree otherwise.  Appeals are taken to the United States Court of Appeals for the Eighth Circuit (appellate court), pursuant to Title 18, United States Code, Section 3742(a).  The appellate court has ruled that defendants can waive (give up) their right to appeal.  Defendants often waive their right to appeal as part of a plea agreement and in exchange for concessions by the United States.  The appellate court will enforce such waivers.

Defendant and defendant's attorney acknowledge they have fully reviewed and fully discussed the record in this case and all issues that may be raised on appeal.  They have fully discussed defendant's right of appeal and the consequences of waiver. Defendant has decided to waive any right of appeal, except as may be provided herein.

By signing this Plea Agreement, defendant voluntarily waives defendant's right to appeal the Court's Judgment against defendant; and, absent a claim of ineffective assistance of counsel, defendant waives all rights to contest the Judgment in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255.  Defendant reserves only the right to appeal from a sentence that is greater than the upper limit of the Court-determined Sentencing Guidelines range.

19

Defendant understands that the United States was motivated by defendant's willingness to waive any right of appeal when the United States chose to offer defendant terms of a plea agreement. In other words, the United States was willing to offer certain terms favorable to defendant in exchange for finality. Defendant understands and agrees this case will be over once defendant has been sentenced by the Court. Defendant agrees that it will be a breach of this agreement if defendant appeals in violation of this agreement. The United States will rely upon defendant's waiver and breach as a basis for dismissal of the appeal. Moreover, defense counsel may reasonably conclude and inform the appellate court that an appeal is wholly frivolous. Defense counsel may then move to withdraw, citing Anders v. California, 386 U.S. 738, 744 (1967), and Smith v. Robbins, 528 U.S. 259 (2000). Defendant agrees an appeal in violation of this agreement should be dismissed.

By signing this Plea Agreement, the defendant further specifically waives defendant's right to seek to withdraw defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. The defendant agrees that any attempt to withdraw defendant's plea will be denied and any appeal of such denial should be dismissed.

23.    The Assistant United States Attorney and attorney for defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes

regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24.    Defendant acknowledges reading and understanding all provisions of the Plea Agreement.  Defendant and defendant's attorney have discussed the case and reviewed the Plea Agreement.  They have discussed defendant's constitutional and other rights, including, but not limited to, defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. AGREED:

Dated:  _4/11/18_____        _____
                                    CHRISTOPHER C. MYERS
                                    United States Attorney


Dated:  _4.9.18_____        _____
                                    ANTHONY SANTOS GOMES, a/k/a ANT
                                    Defendant


Dated:  _4-9-18_____        _____
                                    BRUCE RINGSTROM JR.
                                    Attorney for Defendant

21